Abraham HARRIS, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 81–0361.

United States District Court, District of Columbia.

Feb. 25, 1982.

Murray J. Belman, Donald Crowell, II, Washington, D. C., for plaintiff.

Diane M. Sullivan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM ORDER

BARRINGTON D. PARKER, District Judge.

This matter arises on cross-motions for summary judgment. The issue presented is whether thirteen TV Broadcast Technicians employed by the United States International Communications Agency (ICA) can obtain contractual relief under the Tucker Act, 28 U.S.C. § 1346,[1] for the agency's alleged inability to perform certain terms of an agreement shifting the employment status of the technicians from the Foreign Affairs Specialist Corps (FAS) to Civil Service's General Schedule (GS).

The plaintiff technicians instituted this proceeding upon learning that they had been downgraded. They had accepted an ICA proposal to convert their status from FAS to GS with the understanding that they would be classified at a GS–12 grade level. ICA later learned, however, that the Civil Service Commission had previously determined that the position was not properly classifiable at a grade level higher than GS–11. As a result the technicians were downgraded.

The plaintiffs seek recission of the agreement resulting in a reclassification, or relief to secure the benefit of the original bargain. Defendants assert that the government has broad discretion in the area of federal employment and traditional contract law principles are inapplicable in a proceeding under the Tucker Act. They also contend that the Court cannot provide equitable relief under the Tucker Act.

For the reasons noted below, the Court concludes that it lacks jurisdiction to grant relief under the Tucker Act and summary judgment should be entered for the government.

The material facts are undisputed. During their employment with ICA, plaintiffs served under three personnel systems: the Federal Wage System, the General Schedule, and the FAS Corps—an arm of the Foreign Service System.[2] Plaintiffs' claims focus on the most recent shift in their employment status, from FAS to GS.

In 1977, ICA adopted a plan to replace the FAS program and set forth procedures to convert FAS employees to the General Schedule. The new procedure limited Foreign Service opportunities by precluding those employees who chose to convert from reentering the Foreign Service except in limited situations. Although the new procedures did not require a change, plaintiffs accepted ICA's offer to apply for reconversion to the General Schedule in 1978. Plaintiffs were informed that ICA had determined that their position would be classifiable at the GS–12 level.

Approximately one year after the conversion, ICA's Director of Personnel Services issued a Survey Report expressly accepting a 1976 decision of the Civil Service Commission's Classification Appeals Office which had certified the broadcast technician position at the GS–11 level. The Report specified that the positions were to be downgraded from GS–12 to GS–11. Pursuant to an ICA inquiry on the matter, the Office of Personnel Management approved applica-

---

1. Under the Tucker Act, federal district courts have concurrent jurisdiction with the Court of Claims over claims against the United States for less than $10,000, not sounding in tort. The Court of Claims has exclusive jurisdiction over claims in excess of $10,000.

2. Plaintiffs agreed to convert in 1975 to FAS, which offered potentially improved salaries and retirement and disability benefits. As a neces-

sary intermediate step, ICA secured Civil Service approval to temporarily convert plaintiffs' position to the GS–11 level. Dissatisfied with the rating, plaintiffs' union filed a group classification appeal. The Civil Service Commission Office of Classification Appeals denied the request for a higher grade and certified the position at GS–11. This ruling triggered the subsequent downgrading which plaintiffs challenge.

tion of the grade and pay retention provisions in 5 U.S.C. §§ 5362–63,[3] and plaintiffs were notified in October, 1980. They were also placed in a priority placement program for GS–12 positions subject to availability.[4]

In this proceeding the plaintiffs seek recission of their most recent employment contract, a return to foreign service status, and recoupment of all benefits lost as a result of a GS–11 classification rather than at the GS–12 level. They contend that the most recent employment contract should be stricken and that the Court has subject-matter jurisdiction under the Tucker Act because they seek equitable relief in conjunction with monetary relief.

Plaintiffs' claim requires the Court to apply principles of contract law yet contract theories alone have only limited applicability in federal employment proceedings under the Act. *Shaw v. United States*, 640 F.2d 1254, 1260 (Ct.Cl.1981); *see* 5 U.S.C. § 2105 *et seq.* There is no language in *Shaw* suggesting, as plaintiffs argue, that the case may be distinguishable because it involved an alleged breach which the claimant was aware of prior to entering into a federal employment contract. The broad scope of the *Shaw* holding is clear:

> [P]laintiff may not base his theory of recovery on contract law since he was a federal employee. Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.

*Id.*, at 1260; *cf. Larionoff v. United States*, 365 F.Supp. 140, 145–46 (D.D.C.1973) (alluding to contract principles but only in deter-

mining the extent of federal employment authority to abrogate employee benefits guaranteed by Congress), *rem. on other grounds*, 533 F.2d 1167 (D.C.Cir.1976), *aff'd*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 248 (1977).

■ Moreover, under the terms of the Tucker Act, federal courts are typically limited to fashioning relief of a monetary nature. In *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973), the Supreme Court noted:

> [T]he Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States.

*Accord Lee v. Thornton*, 420 U.S. 139, 140, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975).

■ A narrow exception exists, however, where equitable concepts will help to assure that monetary relief will yield a just result. *Quinault Allottee Association v. United States*, 453 F.2d 1272, 1274 n. 1 197 Ct.Cl. 134 (1972), *citing United States v. Milliken Imprinting Co.*, 202 U.S. 168, 173–74, 26 S.Ct. 572, 573, 50 L.Ed. 980 (1906). Courts have consistently taken the position that the exception may only be invoked to flesh out the contours of relief where the remedy sought is principally monetary. Since plaintiffs essentially seek a return to their previous employment status, recission provides the primary avenue of relief and this case does not fall within the narrow exception to the general rule precluding the exercise of jurisdiction wherein the relief sought is equitable in nature. While lost benefits are also sought, this is in the alternative or incidental to the equitable remedy of recission which is the principal form of relief. Plaintiff's supporting papers make this quite clear.[5]

---

**3.** 5 U.S.C. §§ 5362–63 provide for retained grade, pay, benefits and training and promotional eligibility for two years following downward reclassifications. Following the two years, grade retention ceases, however, the employee continues to receive a salary at the rate applicable before the grade change.

**4.** The issue of exhaustion of administrative remedies has also been raised yet it does not bar the exercise of jurisdiction. While only one

plaintiff filed an administrative grievance and did not fully appeal the agency denial, further review would have been futile since the ICA has taken the position that the agency lacks the authority necessary to provide the relief requested.

**5.** *See e.g.*, plaintiffs' Memorandum of August 3, 1981 at 2, note 2.

The Court of Appeals for this Circuit addressed this issue in a class suit under the Tucker Act where navy personnel sought relief including recission to secure the benefit of certain reenlistment bonuses. *Larionoff v. United States*, 533 F.2d 1167. Although relief was ultimately granted on other grounds, the court acknowledged the existence of the exception. 533 F.2d at 1181, *citing Quinault Allottee Association*. The Court in *Larionoff* questioned whether the case was "exceptional" enough to place it within the exception, however, since the equitable relief could not be construed as merely in aid of a money judgment.

Further examination of the few cases under the Act where courts have considered borrowing from equity to mold a remedy compels the conclusion that the exception applies only in the narrowest of circumstances. Plaintiffs have not demonstrated that they fall within the exception. *See e.g., Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1138 n.10 (5th Cir. 1980) (nonmonetary relief was not "merely incidental or in aid of" monetary relief); *Werner v. Department of Interior*, 581 F.2d 168, 171 (8th Cir. 1978) (damages claim was "clearly incidental" to equitable relief); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974) (denying equitable relief "unless it is in aid of a claim" for money judgment).

Since plaintiffs' claim requires application of contract principles in the federal employment context and seeks relief founded principally in equity, this Court is not empowered under the Tucker Act to exercise jurisdiction over the claims asserted.

Accordingly, it is this 25th day of February, 1982

ORDERED that the government's motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied and the complaint is dismissed with prejudice.

The plaintiffs seek a money judgment for any Foreign Service benefits (increased retirement benefits primarily) lost from the time they transferred to Civil Service status until such time as they are reinstated in their Foreign Service positions.

\* \* \* \* \* \*

If the Court does not order recission and reinstatement, the plaintiffs seek a money judgment that would give them the benefit of their bargain with the Agency.