**Dr. Rulon GARFIELD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 170–82C.

United States Claims Court.

Aug. 14, 1984.

Alan H. Friedman, Boulder, Colo., for plaintiff.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

SPECTOR, Senior Judge.

In his petition (complaint) plaintiff alleges that his reduction-in-rank and removal from his position as Regional Director for Region VIII of the Department of Health, Education and Welfare (HEW, now Health

1. Plaintiff also alleges additional claims relating to an abortive appointment in August 1981 as Regional Representative for Region X, of the Department of Education. He now, however,

and Human Services, HHS) was an unlawful, unjustified and unwarranted personnel action. He asks that he be reinstated to comparable position, grade, rank and pay rate and that he be awarded back pay, allowances and differentials and restoration of leave credit from February 15, 1977.[1] The issues are framed by cross-motions for summary judgment.

### Statement of Facts

Plaintiff is self-described as a member of the Republican party who, in 1970, lived in Ogden, Utah, where he was a Utah State Senator, an official with the Ogden City Board of Education, and a principal in three profitable business enterprises. He was offered a position as Deputy Director of HEW's Region VIII and accepted it in reliance on the fact that the position was in the "career" service. In further reliance on that fact, he resigned from the above-described positions in Utah, divested himself of his business interests there, and moved his wife and seven children from Utah to Colorado on October 12, 1970.

On October 17, 1971 plaintiff was appointed Regional Director for HEW's Region VIII. He states this was with the understanding, and in reliance upon the fact, that the Director's position was also in the federal "career" service. Federal Personnel Manual Supp. 296–31, Subchapter S 1 requires notice to an employee in these circumstances that he is leaving the competitive service, and a clear statement by the employee that he is doing so voluntarily. Plaintiff alleges that there was no compliance with the Manual, that he has steadfastly refused to give up his career rights, and that he was often advised that he had not in fact given them up.

Effective January 15, 1975, Executive Order No. 11839 converted all employees holding Limited Executive Assignments, into Non-Career Executives. Those employees already holding Career Executive

agrees with defendant's position that this court lacks jurisdiction over the latter claims, and they are deemed withdrawn.

Assignments were exempt from the Executive Order. Plaintiff states that at that time he was advised by an employee of the Civil Service Commission (now Office of Personnel Management) that he was entitled to career service rights. He further states that in the latter part of 1976, he was advised by representatives of the Secretary of HEW that he would be formally converted to the career service.

However, on January 20, 1977, Jimmy Carter, a Democrat, was inaugurated as President. By letter of February 15, 1977, plaintiff was given three days notice that he would be relieved of his duties as Regional Director, effective February 19, 1977.[2] By subsequent letters of March 29 and May 16, 1977, plaintiff was given notice of his proposed removal and of his removal, with stated reasons underlying the removal action. At the time of his removal, plaintiff held the grade of GS–18, and was Chairman of the Federal Regional Council.

Appeals within the Civil Service Commission (subsequently reorganized into the Office of Personnel Management and the Merit Systems Protection Board) were unsuccessful.[3] Between May 20, 1977 and September 1, 1981, plaintiff was employed as a Professor of Educational Administration at Brigham Young University, Provo, Utah, while awaiting the outcome of his administrative appeals. Then in August 1981, employees of the Department of Education offered him an appointment as the Secretary's Regional Representative for Region X in Seattle, Washington, at grade GS–15. A news release dated September 21, 1981 expressly announced the appointment (together with their qualifications) of seven such regional representatives, including plaintiff. But after plaintiff had moved with his family to Seattle, Washington, and after discharging his duties in that position as a designated "expert," the Department refused to actually swear plaintiff in as the Secretary's Regional Representative and his duties were terminated as of May 1, 1982.[4]

*Discussion*

A hearing was held on plaintiff's appeal. The agency (HEW) failed to appear. In denying plaintiff's administrative appeal on September 7, 1979, the Denver Field Office of the Merit Systems Protection Board (hereinafter DFO) dismissed that portion of his appeal protesting the agency's failure to follow "reduction in rank" procedures.[5] The DFO concluded that his removal was not "a lessening of an employee's relative standing within the organization as determined by his official position assignment" because "an employee's official position assignment can only be changed through official personnel action" and "a reduction in rank can only occur when an employee is changed from one position to another through official personnel action."

It appears that the outright removal which took place here does not fit the government's narrow definition of a "reduction in rank" as described in the regulations, and that the parties and this court should therefore directly focus upon the issues raised by the removal action itself.

The DFO found that plaintiff's conversion (promotion) from Deputy Regional Director to Regional Director occurred after the completion of a one-year probationary

**2.** Plaintiff further complains that the removal letter was signed by Hale Champion who on that date was not even an official of HEW.

**3.** The Board assumed jurisdiction because plaintiff is a veteran preference eligible under 5 U.S.C. 7701 (1966). The parties acknowledge that this court, rather than the U.S. Court of Appeals for the Federal Circuit, has jurisdiction over this action because the removal action occurred prior to the effective date of the Civil Service Reform Act of 1978, Public Law No. 95–454, 92 Stat. 111, which reorganized the Civil Service Commission into the Office of Personnel Management and the Merit Systems Protection Board. Under the Federal Courts Improvement Act of 1982, Public Law 97–164, appeals from decisions of that Board are now to the Court of Appeals for the Federal Circuit.

**4.** The claims arising out of this termination were subsequently withdrawn. See note 1, supra.

**5.** Citing 5 C.F.R. § 752.202(d) and (e).

period as a career-conditional appointee in the competitive service. Therefore, since plaintiff had already attained competitive status, the DFO found that he retained that status when he was promoted to a Limited Executive Assignment (LEA) pursuant to the authority contained in 5 C.F.R. 305.509. However, it further concluded that when President Ford issued Executive Order 11839 on February 15, 1975, that Order required, with certain exceptions, that persons serving in an LEA had to be converted to a Non-Career Executive Assignment (NEA). The agency subsequently determined that the plaintiff did not fall within the stated exceptions and converted his position to an NEA effective February 15, 1975. The agency then concluded that an NEA is required under 5 C.F.R. 305.603 to be in the excepted service, and therefore converted him from the competitive to the excepted service.

The DFO [6] found that when President Carter took office and appointed Joseph Califano as Secretary of HEW, "(b)ecause of the change in administration the appellant was relieved of his duties as Regional Director on February 19, 1977, and was removed from the Federal Service effective May 20, 1977."

Following the abrupt three-day notice of February 15, 1977 from the forementioned Hale Champion, plaintiff was informed by a subsequent letter of March 29, 1977 that it was proposed to remove him from his position because the position played a significant part in the determination of administration policies, requiring that the incumbent have the full confidence of the Secretary of HEW. The DFO on review found that the March letter "was stated with sufficient specificity and detail to enable the appellant to join issue and make a knowledgeable reply." Following plaintiff's written reply of April 15, 1977, and by letter dated May 16, 1977, plaintiff was removed from his position, effective May 20, 1977.

Plaintiff argues that the abrupt three-day notice of February 15, 1977 demon-

strates a predetermination to remove him. But the DFO found "that this contention is not supported by the evidence of record" because of the subsequent advice to him on March 29th that any reply to his "proposed" removal would receive "full consideration." The DFO therefore concluded that the agency "did comply with the procedural provisions of 5 U.S.C. 7512 and 5 C.F.R. 752.202."

The DFO regarded the core issue to be whether or not plaintiff "was properly in an NEA position at the time of his removal." It acknowledged that the agency "failed to inform the appellant of the conditions of his new appointment" at the time of his conversion from a career to an LEA position, but concluded that this omission was later rectified when he was "informed of these conditions and was apparently informed that the agency would do everything possible to return him to the competitive service upon the completion of the LEA." It was determined by the DFO that under the provisions of 5 C.F.R. 305.510, plaintiff could have been returned to the competitive service under various options, but only at the end of 5 years service in an LEA. Since President Ford's Executive Order 11839 intervened before plaintiff had completed 5 years in an LEA, his position was then converted to an NEA pursuant to that Order, and he was no longer eligible to acquire competitive status.

Plaintiff argues that since he began his career in the competitive service, and since he had retained competitive status at the completion of a one-year probationary period at which time his position was converted to an LEA, he should not have been serving as an NEA in the excepted service when he was removed. Because of his prior competitive service, he argues, he should have been given a Career Executive Assignment (CEA) after three years of total service, or in the alternative, prior to the issuance of Executive Order 11839 which exempted a CEA from mandatory conversion to an NEA.

6. Acting through its designated "Presiding Official" at the administrative hearing.

The DFO responded to this by observing that plaintiff had not expressed unhappiness with his status and that he would have been required in any event to complete three years in his original Career-Conditional appointment to be eligible for a career appointment, which he did not do. Moreover, to be eligible for a CEA, he would have had to complete 5 years as an LEA, which he also did not do.

Having disposed of the procedural issues raised by plaintiff, the DFO addressed the merits of plaintiff's complaint that HEW stated insufficient cause for his removal. As to this, the DFO cited *Leonard v. Douglas*, 321 F.2d 749 (D.C.Cir.1963), holding that agency dissatisfaction with a person occupying a policy-determining position constitutes a sufficient basis for a finding that his removal will promote the efficiency of the service within the meaning of the Veterans Preference Act. It also cited 5 C.F.R. 305.604 authorizing an appointing officer to remove a person from a non-career executive assignment when the qualifications or relationships required for the assignment change or cease to exist. In summary, the DFO found that plaintiff's position required the making of policy determinations, and the relationships which that in turn required, had ceased to exist.

Plaintiff also alleges that his removal was based on purely partisan political considerations. Citing *Elrod v. Burns*,[7] the DFO concluded that there is no constitutional impediment to consideration of political affiliation as a factor in removal from a policy-making or confidential position. Moreover, it observed that plaintiff was subject to removal if the qualifications or relationships required for the position ceased to exist. The regulations set forth in 5 C.F.R. 305.604 make it clear that persons filling NEA's are subject to removal with a change of administration, provided the conditions set forth in the regulations are present.

Before the DFO, plaintiff, a Mormon, also alleged that his removal was prompted by religious discrimination. He specifically directed this charge against Congresswoman Patricia Schroeder; the American Federation of Government Employees, Local 1802, Denver Region; the U.S. Civil Service Commission; and HEW.

The DFO disregarded the charges against the Congresswoman and the Union because the DFO found that under 5 C.F.R. 713.212, an employee may file a complaint of discrimination only against "his employing agency or against an agency in which he was an applicant for employment." Because the Civil Service Commission, although not his employer, had been investigating HEW in Region VIII, the DFO did review the charges directed at the Commission as well as those directed at HEW.

Plaintiff alleges that the Commission's investigation was itself discriminatory, and became a personal vendetta against Mormons. He cites this as the reason for his removal. To the contrary, the DFO found that the Commission had conducted an investigation based on complaints from the Congresswoman and the Union; that the complaints were not frivolous; and that the investigation uncovered significant problems with the hiring practices of the HEW regional office while plaintiff was in charge. However, that investigation was unrelated to plaintiff's removal, the DFO found, because the Commission report was not forwarded to HEW until six months after plaintiff had been removed. Officials testified before the DFO that they were not aware of any of the specific information contained in the Commission's report at the time of plaintiff's removal, and the DFO found that plaintiff had failed to make a prima facie showing of discrimination.[8] It invited plaintiff to petition the Equal Employment Opportunity Commission for review of this portion of its decision.[9]

---

**7.** 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

**8.** Citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**9.** The briefs indicate that the discrimination aspects of plaintiff's complaint are no longer part of this action and that they are being pursued in another forum.

The DFO concluded "that the change in confidential relationships required of the incumbent of this position was the sole reason for the appellant's removal and that the appellant's removal was taken for such cause as will promote the efficiency of the service."

The Merit Systems Protection Board (MSPB) in Washington reopened plaintiff's appeal at his request, and affirmed the September 7, 1979 decision of its Denver Field Office in an Opinion and Order dated July 21, 1981. That opinion more or less follows the Field Office Decision, but does contribute some additional facts and reasoning. President Ford's Executive Order No. 11839 of February 15, 1975 is cited as a watershed in the treatment of Regional Director positions. Those serving under Career Executive Assignments (CEA's) on that date were not converted to non-career assignments (NEA's), but those serving under Limited Executive Assignments (LEA's) were so converted. The reasons given are quoted from the President's Order:

"The program to decentralize Federal policy and decision making and to involve local governments and other interested parties in Federal, State, and local policy and program development requires a capability for deep involvement in the development and advocacy of Administration proposals and solicies, and support of their controversial aspects, on the part of certain senior regional officials."

The MSPB concluded:

1. Since plaintiff was not officially reassigned prior to his removal, he suffered no reduction in rank appealable under 5 U.S.C. 7511 (1976).

2. The Supreme Court's holding in *Elrod v. Burns*, (note 7, supra), permits patronage dismissals of government officials in "policymaking" or "confidential" positions,[10] where the dismissal notice informs the official that he lacks the confidence of the agency's new Secretary because of his affiliation with an opposing political party.

3. Plaintiff received all the procedural safeguards to which he was entitled as a preference eligible veteran. Even a competitive service employee or a preference eligible may be affected by an adverse personnel action, if it "promotes the efficiency of the service."

4. Although plaintiff was relieved of his duties before his removal was officially proposed, this did not evidence a decision to remove him prior to the official notice. Plaintiff was later given an opportunity to respond, and in any event "appellant was removed for permissible partisan political reasons that could not, as a practical matter, be refuted." The fact that he was relieved of his duties prior to his official removal is of no consequence because "he continued to receive his pay until the date of his removal."

5. In response to plaintiff's complaint that he was denied a prompt and fair hearing [11], plaintiff has not shown "demonstrable prejudice," [12] nor a causal relationship between those circumstances and his removal.

■ Although the procedures followed in this removal action leave something to be desired, all the statutory and regulatory bases were eventually touched and the removal is no longer vulnerable on procedural grounds. As a veteran preference eligible, plaintiff ultimately received all of the due process safeguards which would be extended to an employee in the competitive service. Therefore, although it appears clearly that he was not in the competitive

---

**10.** The MSPB cites *DeLong v. U.S.*, 621 F.2d 618 (4th Cir.1980), which it finds was clarified in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

**11.** There was a two-year delay between the filing of an appeal, and the hearing thereon. Plaintiff also contends that full exploration of the religious discrimination claim was precluded by the exclusion of testimony regarding the pressure for his removal from Congresswoman Schroeder and the Union.

**12.** Citing *Polcover v. Secretary of Treasury*, 477 F.2d 1223, 1232 (D.C.Cir.), cert. den., 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

service when he was removed, it is not necessary to dwell on that issue.

The relevant statute [13] and regulations [14] permit removal of an employee in the competitive service "for such cause as will promote the efficiency of the service" provided that 30 days advance written notice of the proposed action is given stating the specific reasons for the proposed action, with an opportunity to respond, and a right of appeal. Plaintiff has now received all these safeguards.

Therefore the sole remaining issue is whether the reasons offered for plaintiff's removal would support a finding that his removal would "promote the efficiency of the service." *Shaw v. United States*,[15] is very close on its facts. Mr. Shaw also challenged his dismissal from a GS–18 appointment on procedural, constitutional and contractual grounds. His original career executive position of Deputy Assistant Secretary of Defense (Regional Programs) was also converted to a non-career executive assignment (NEA), over his protest. Following a change in administration (from President Ford to President Carter) he received notice of his proposed removal due to the "policy determining" nature of his position. The incumbent was required to be an individual "suitable to his superiors" and one who (in the words of the notice of proposed removal) was best able to determine the policies of the Department. He was advised that with the change of administration, his relationship in that regard had ceased to exist.

After an oral response to the Secretary's representative, Secretary of Defense Harold Brown notified Mr. Shaw of his removal. The Civil Service Commission sustained the removal action for the reason that his removal would "promote the efficiency of the service" in that he no longer had the confidence of his superiors.[16]

The court in *Shaw* found no procedural errors in his removal. Although the court concluded that the phrase "loss of confidence" is more a "polite formula than a nugget of useful information", it reasoned that the Congress had intended that our system allow "for numerous noncareer policy aides who may be brought in and moved out at will . . . ." It was not intended, the court found, that the requisite notice with "reasons", be the opening gun in a debate over the validity of those reasons.

The court in *Shaw* acknowledged that the "issue of patronage dismissals, while certainly not a new problem, has been raised recently in a number of cases. While it has been found generally that patronage removals are constitutionally invalid, they are proper where the position in question involves policymaking."[17] The court further observed that in *Branti v. Finkel*[18] the Supreme Court held that it is not the label of "policymaker" or "confidential" that is determinative. "The question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."[19]

---

13. 5 U.S.C. § 7513 (Supp. II 1978).

14. 5 C.F.R., Part 752, Subparts B and C.

15. 226 Ct.Cl. 240, 640 F.2d 1254 (1981).

16. These reasons are virtually identical to the reasons offered for removal of plaintiff herein.

17. *Shaw*, 226 Ct.Cl. at 248, 640 F.2d 1254. The court relies upon *Elrod v. Burns*, note 7, supra, which it quotes in pertinent part as follows:
     "A second interest advanced in support of patronage is the need for political loyalty of employees, not to the end that effectiveness and efficiency be insured, but to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies pre-

sumably sanctioned by the electorate. The justification is not without force, but is nevertheless inadequate to validate patronage wholesale. Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end . . . ."

18. Note 10, supra.

19. *Branti*, note 10, supra, 445 U.S. at 518, 100 S.Ct. at 1294. In *Branti*, two Republican public defenders successfully proved that they were discharged solely because they were not affiliated with the Democratic Party. It was found that their dismissals violated the first and fourteenth amendments. In contrast the plaintiff in *Shaw* was a Democrat, hired by a Republican administration and dismissed by a Democratic

It has been demonstrated in this case that party affiliation is an appropriate requirement for the public office involved herein. There can be little doubt on the stated facts that "the efficiency of the service" is advanced by the removal of a Federal official, once it has been shown that the official is required to have a confidential relationship with his superiors, and it is further shown that such a relationship has ceased to exist. After President Ford's Executive Order No. 11839, it was apparent that those in plaintiff's position required "a capability for deep involvement in the development and advocacy of Administration proposals and policies and support of their controversial aspects."

The letter notice proposing plaintiff's removal stated it to be:

"... an inherent qualification requirement that the incumbent be an individual who has the full confidence of and can work closely with the Secretary of Health, Education and Welfare in determining the policies of the Department. With the departure of the previous Secretary, and as a result of Secretary Califano's appointment to the position, this relationship has ceased to exist and does not now exist between you and the Secretary."

Partisan politics may have been a contributing factor in the assertion of that lack of "confidence", and in the cessation of that "confidential relationship" but it was not the sole factor. Plaintiff argues that he was not afforded an opportunity to demonstrate his ability to maintain a confidential relationship with the new Secretary, despite their differing political affiliations. The difficulty with this argument is that confidential relationships depend upon the subjective and mutual feelings of *both* parties to the relationship. "It takes two to tango." Plaintiff could never unilaterally establish that he had a "confidential relationship" with the Secretary, if a Secretary of a different political persuasion declined to share that feeling.[20] Thus the MSPB did not err when it stated, *inter alia,* that "party affiliation is an appropriate requirement for the effective performance of the position of Regional Director."

### Conclusion

Plaintiff's Motion for Summary Judgment is denied; defendant's Cross Motion for Summary Judgment is allowed; and the complaint shall be dismissed.

---

administration. At no point in the proceedings was Shaw's party affiliation or political belief a factor in his dismissal.

20. *See* and *cf.* the facts in *Awtry v. United States,* 231 Ct.Cl. 271, 684 F.2d 896 (1982).