BALDWIN, Circuit Judge.
 

 Brian Chu, James R. Goss, Khadijah Hamdallah, Staley Jackson, and Gregory Lower (appellants or medical residents), appeal an order of summary judgment by the United States Claims Court which held that the United States was not contractually obligated to provide medical residency training to appellants after their government employment was lawfully terminated. We affirm.
 

 Background
 

 The reader is directed to
 
 Chu v. Schweiker,
 
 690 F.2d 330 (2d Cir.1982), for a detailed discussion of the facts. Briefly, appellants were either commissioned officers or civil service employees of the Public Health Service (PHS) hospital in Staten Island. Prior to its October 31, 1981 closing, the PHS hospital in Staten Island offered board accredited training programs in seven fields for the full number of years required to qualify for board certification as a specialist. Once a doctor was selected by the hospital, a formal offer of residency training was extended containing the following standard provision:
 

 It is to be understood that this appointment is for the minimum specified number of years required by the appropriate American Specialty Board for certification or for the period for which the specific program is approved.. However, each year of subsequent training will be contingent upon your performance during the preceding year.
 

 In 1981, all PHS hospitals including the PHS hospital in Staten Island were closed as a result of government cost-cutting measures. The medical residency programs were also terminated. The medical residents brought suit in the United States District Court for the Southern District of New York seeking an order directing the Secretary of Health and Human Services to either place them in private or federal residency programs or to support them in mutually acceptable residency programs. The district court held that the medical residents had a constitutionally protected property interest -in continuing their residency programs at the government’s expense, but denied their claim for injunctive relief.
 

 On appeal, the United States Court of Appeals for the Second Circuit reversed the judgment of the district court, holding that the applicable statutes and regulations did not create a constitutionally protected property interest in continued residency. The Second Circuit affirmed the district court’s judgment insofar as it denied injunctive relief and ordered the case transferred to the Court of Claims pursuant to 28 U.S.C. § 1406(c) (1976) for damages to'be determined.
 
 [1]
 
 After the case was transferred, the parties cross-moved for summary judgment, and the Claims Court, by unpub
 
 *1228
 
 lished order dated September 20, 1984, granted the government’s motion, dismissing the complaint. The court held:
 

 (1) that employment by or appointment to the Public Health Service (PHS) was a prerequisite for eligibility to receive residency training, (2) that the incidents of plaintiffs’ appointments to or employment by PHS (including the right to receive training) were statutory rather than contractual in origin, and (3) that the PHS official who appointed or employed plaintiffs lacked authority to vary, by contract, the terms of their employment.
 

 Appellants assert that PHS breached its contractual obligation when it prematurely terminated their residency training. Appellants do not challenge that PHS lawfully terminated their employment. Instead, the appellants contend that their rights as residency trainees arose prior to their rights as employees and were independent from and broader than their rights as employees. The Claims Court rejected this contention. So do we.
 

 OPINION
 

 Residency training was conducted by PHS in accordance with 5 U.S.C. § 4101(4) (1982) which defines “training” as:
 

 the process of providing for and making available
 
 to an employee,
 
 and placing or enrolling
 
 the employee
 
 in a planned, prepared, and coordinated program, course, curriculum, subject, system, or routine of instruction or education, in scientific, professional, technical, mechanical, trade, clerical, fiscal, administrative, or other fields which are or will be
 
 directly related to the performance by the employee
 
 of official duties for the Government____ [Emphasis added.]
 

 The expenditures and pay allowances authorized for the training of officers are controlled by 42 U.S.C. § 218a (1982) which states, in pertinent part, that
 
 “commissioned officers of the [Public Health] Service
 
 shall ... be available for the pay and allowances ... while attending any Federal or non-Federal educational institution or training program and, subject to regulations of the President____” (Emphasis added.) These statutory provisions include 42 U.S.C. § 209(a)(2) (1982) which states in pertinent part, “[r]eserve commissions shall be terminated at any time, as the President may direct.”
 
 [2]
 

 Thus, under the controlling statutes, residency training was only authorized for and available to federal employees.
 
 [3]
 
 We conclude that the training was an incident of employment, since a resident’s status as a trainee was clearly secondary to and dependent upon his or her status as an employee. Once appellants’ employment was properly terminated, their right to receive training was concomitantly terminated.
 
 Cf. Zucker v. United States,
 
 758 F.2d 637, 640 (Fed.Cir.1985) (for federal workers serving by appointment, rights are a matter of legal status so that entitlement to
 
 *1229
 
 benefits must be determined by reference to the statute and regulations governing the benefits).
 

 Appellants’ argument that their rights as trainees preceded (and, therefore, exceeded) their rights as employees is contrary to the well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.
 
 Hayman v. United States,
 
 590 F.2d 344, 218 Ct.Cl. 729 (1978);
 
 Urbina v. United States,
 
 428 F.2d 1280, 192 Ct.Cl. 875 (1970);
 
 cf. United States v. Hopkins,
 
 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (the United States may employ individuals by contract rather than by appointment, where provided for by regulation). In
 
 Shaw v. United States,
 
 640 F.2d 1254, 226 Ct.Cl. 240 (1981), the court said that
 

 the law is well settled that, “public employment does not, * * * give rise to a contractual relationship in the conventional sense.” Therefore, plaintiff may not base his theory of recovery on contract law since he was a federal employee. Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not
 
 ipso facto
 
 create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.
 

 Id.
 
 at 1260 (citations omitted).
 

 The application for appointment as a reserve officer is prepared contemporaneously with the application for training. Both the application and appointment documents clearly indicate that training was contingent upon federal employment, and that the medical residents were to be given the rights and privileges of commissioned personnel. The Claims Court held, and we agree, that the terms of appellants’ employment were controlled by statute and that appointment to the PHS was a prerequisite for eligibility to receive residency training.
 

 Appellants invite us to analogize the medical residency process to the military enlistment process, and follow cases such as
 
 Grulke v. United States,
 
 228 Ct.Cl. 720 (1981), which held that the military enlistment agreement, although governed by statute and regulation, may also be examined under traditional contract principles where the military service breaches program guarantees. We decline the invitation.
 

 Neither our predecessor, the Court of Claims, nor the Claims Court has found that the military enlistment agreement gives rise to a contractual relationship. Rather, the military enlistment “agreement” effects a change in status along with the correlative rights and duties that come with that change.
 
 Bell v. United States,
 
 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961);
 
 see In re Grimley,
 
 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).
 

 Appellants’ cited cases are distinguishable as they involve neither a termination of employment, nor instances where the President invoked 42 U.S.C. § 209(a)(2) to terminate a government agency. Rather, the cases cited involve disputes about assignments within the military or reliance upon alleged breaches of contract as a ground for seeking discharge. Thus, these cases do not favor the appellants on the question presented in this case: whether federal officers and employees possess contractual rights which exceed their rights to continued employment. Appellants cite no authority for an exception to 42 U.S.C. § 209(a)(2) and we will not create one.
 

 For the foregoing reasons we affirm the Claims Court’s decision and hold that the United States was not contractually obligated to provide medical residency training to the appellants after their government employment was lawfully terminated.
 

 AFFIRMED.
 

 [1]
 

 . As a result of the Federal Courts Improvement Act of 1982, the United States Claims Court assumed jurisdiction over the case. 28 U.S.C. § 1491
 
 et. seq.
 
 (1982).
 

 [2]
 

 . Appellant Hamdallah was a civil service employee and it is well established that an employing agency is free to discharge excepted service employees without cause. 5 U.S.C. §§ 7501(1), 7511(a)(1)(A); 5 C.F.R. §§ 213.3116(b)(5), 752.-201(b), 401(b).
 
 Fiorentino v. United States,
 
 607 F.2d 963, 966, 221 Ct.Cl. 545 (1979),
 
 cert. denied,
 
 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980);
 
 Carter v. United States,
 
 407 F.2d 1238 (D.C.Cir.1968);
 
 Batchelor
 
 v.
 
 United States,
 
 169 Ct.Cl. 180,
 
 cert. denied,
 
 382 U.S. 370, 86 S.Ct. 147, 15 L.Ed.2d 109 (1965).
 

 [3]
 

 . Appellants Chu, Goss, Jackson and Lower were Reserve Officers in the Commissioned Corps of PHS. Reserve officers are appointed by the President without regard to the civil service law, 42 U.S.C. § 204, and their service is terminable “at any time as the President may direct.” The president has delegated the authority to issue regulations to terminate reserve appointments to the Secretary of Health and Human Services and the Secretary has issued such regulations in the Commissioned Corps Personnel Manual. See section 1(c), (f), Executive Order No. 11140, 3 C.F.R. § 117 (1964-1965 Comp.),
 
 reprinted at
 
 42 U.S.C. § 202 note. The pertinent regulations provide for the removal of reserve officers without cause and without their consent in two circumstances pertinent to this case: (1) termination at any time during the "probationary period” of the first three years of active duty; and (2) release from active duty when a reduction in strength of the Commissioned Corps is necessary because of program contraction.