Barbara WOODS, M.D., Luz Mary Aquino, M.D., Arlene Young Jun, M.D., Plaintiffs,

v.

Boaz MILNER, M.D., Michael Sampson, M.D., James Stevens, Alan Wilcox, and Edward Derwinski, Secretary of Veterans Affairs, Defendants.

No. 89–73756.

United States District Court, E.D. Michigan, S.D.

March 15, 1991.

---

Jeffrey A. Heldt, Birmingham, Mich., for plaintiffs.

Jennifer Elgee, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This four-count lawsuit is presently before the Court on four dispositive motions filed by the parties between November 20, 1989 and January 14, 1991. These motions are as follows:

(1) Defendants' Fed.R.Civ.Pro. 56 Motion for Summary Judgment on Counts I, II and III of Plaintiffs' Complaint, filed on November 20, 1989;

(2) Plaintiffs' December 11, 1989 Cross–Motion for Partial Summary Judgment on Count I;

(3) Defendants' Fed.R.Civ.Pro. 12(b)(6) Motion to Dismiss All Claims Except Plaintiff Jun's Discrimination Claim in Count IV Against Defendant Derwinski, filed on January 14, 1991;[1] and

(4) Defendants' Motion for Summary Judgment on Plaintiff Jun's Claim of Discrimination in Count IV, also filed on January 14, 1991.

Having reviewed each of these Motions and the parties' respective Briefs in support and in opposition to the motions, as well as the exhibits and affidavits attached thereto and filed therewith, and having heard the oral arguments of the parties' attorneys on March 7, 1991, the Court is now prepared to rule on these Motions. This Memorandum Opinion and Order sets forth that ruling.

### II. THE PARTIES

Plaintiffs, Barbara Woods, Luz Mary Aquino and Arlene Young Jun, are former and current "temporary full-time" physicians at the Veterans Administration Medical Center in Allen Park, Michigan (the "Allen Park VA Hospital"). They instituted this action in this Court on August 24, 1989 contending that they were each wrongfully denied "permanent" employment at the Allen Park VA Hospital.

The named Defendants are Boaz Milner, Plaintiffs' former supervisor; Michael Sampson, the Chief of Staff at the Allen Park VA Hospital; Alan Wilcox, the former Chief of Personnel at the Allen Park VA Hospital; James Stevens, the Director of the Allen Park VA Hospital; and Edward Derwinski, the Secretary of Veterans Affairs.

### III. PROCEDURAL HISTORY AND SUMMARY OF THE PARTIES' RESPECTIVE CLAIMS AND ARGUMENTS

In their four-count Amended Complaint, Plaintiffs allege (1) that their appointment as "temporary", and not "permanent", VA physicians is in violation of the statutory provisions governing the Veterans Administration's hiring of medical and surgical personnel, 38 U.S.C. § 4101, et seq. (Count I); (2) that with respect to Plaintiffs Aquino and Jun only, Defendants breached an oral contract of employment allegedly promising to convert them to permanent status after two years of satisfactory ser-

---

**1.** Although this January 14, 1991 Motion is presented to the Court as one for dismissal under Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim upon which relief can be granted, this Motion is not based solely upon the deficiencies of the pleadings; rather, in arguing for dismissal, Defendants have presented matters "outside the pleadings". The plain language of Rule 12(b) mandates that, under these circumstances, a motion to dismiss "shall be treated and disposed of as provided in Rule 56." Therefore, the Court will treat Defendants' "Motion to Dismiss All Claims Except Plaintiff Jun's Discrimination Claim" as an alternative motion for summary judgment on these claims under Fed.R.Civ.Pro. 56.

vice (Count II); (3) that by terminating Plaintiff Woods' employment, the Defendants deprived this Plaintiff of an alleged a property interest in continued employment in violation of her Fifth Amendment due process rights (Count III); and (4) that the Defendants discriminated against Plaintiff Jun on the basis of sex and race by denying her application for permanent status, in violation of 42 U.S.C. § 2000e–16 ("Title VII") (Count IV).[2]

The relief sought by Plaintiffs in Count I of their Complaint is (1) a declaratory judgment invalidating the implementing regulations promulgated by the Chief Medical Director of the VA Department of Medicine and Surgery concerning temporary full-time VA physician appointments, and (2) an order of mandamus from this Court compelling the VA to place Plaintiffs in "permanent" positions. They also seek an award of damages on their claims of breach of contract, violation of due process rights, and discriminatory treatment in Counts II–IV.

On November 20, 1989, Defendants moved for Summary Judgment on Counts I, II and III, pursuant to Fed.R.Civ.Proc. 56(c), contending (1) that the implementing regulations and Plaintiffs' temporary appointments in accordance therewith are not violative of the provisions of the Veterans Administration temporary full-time hiring statute, 38 U.S.C. § 4114(a)(3)(A); (2) that the alleged oral representations of the former Chief of Staff at the Allen Park VA Hospital, upon which Plaintiffs Aquino and Jun predicate their common law breach of oral contract claim, cannot, as a matter of law, form the basis of an employment contract with the United States where the terms of the employment are established by statute; (3) that no property interest exists in a temporary appointment so as to give rise to a claim of violation of due process rights; and (4) that even if such a property interest exists, Defendants are,

nonetheless, entitled to qualified immunity from liability on any constitutionally-based claim predicated on such an interest.

On December 11, 1989, Plaintiffs filed a Cross–Motion for Partial Summary Judgment in their favor on Count I (their claim for violation of the VA temporary full-time hiring statute) together with a "Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross–Motion for Partial Summary Judgment". In their Brief, Plaintiffs agree that there is no genuine issue of material fact regarding Count I of Plaintiffs' Complaint, and implicitly adopt Defendants' version of the pertinent facts regarding each of the Plaintiffs' employment as they relate to this count. However, Plaintiffs contend that they are entitled to summary judgment in their favor as a matter of law based upon their argument that the VA implementing regulations which permit temporary full-time appointments for renewable terms of up to three years (and upon which Defendants rely in support of their motion for summary judgment on this count) contravene the language of 38 U.S.C. § 4114(a)(3)(A) which provides that "[t]emporary full-time appointments of physicians ... may exceed 90 days only if the Chief Medical Director finds that circumstances render it impracticable to obtain the necessary services through [permanent] appointments under paragraph (1) of section 4104."

On December 31, 1989, the Defendants filed a Response to Plaintiffs' Motion for Partial Summary Judgment, to which Plaintiffs replied by filing a Reply Brief on January 5, 1990.

Following the filing of the Defendants' first Motion for Summary Judgment and Plaintiffs' Cross–Motion for Partial Summary Judgment on Count I, by stipulation of the parties, Plaintiffs were granted leave to amend their Complaint on May 8, 1990 to add an additional count—Count

---

**2.** Plaintiff Jun's race and sex discrimination claim in Count IV was added to Plaintiffs' Complaint on May 9, 1990, pursuant to a stipulated

Order granting Plaintiffs leave to amend their Complaint entered on May 8, 1990.

IV—Plaintiff Jun's sex and race discrimination claim. The Defendants filed an Answer to the Amended Complaint on June 21, 1990. A Joint Motion to Stay Discovery Pending Resolution of the Cross–Motions for Summary Judgment was filed on November 14, 1990, and denied by this Court on November 20, 1990.

On January 14, 1991, Defendants filed a Fed.R.Civ.Pro. 12(b)(6) Motion to Dismiss All Claims Except Plaintiff Jun's Discrimination Claim in Count IV Against Defendant Derwinski, and a separate Rule 56 Motion for Summary Judgment on Count IV.

In these two January 14, 1991 Motions, Defendants assert additional arguments for dismissal of the first three counts in Plaintiffs' Complaint—to-wit, (1) that Plaintiffs Aquino and Jun's breach of oral contract claim in Count II should be dismissed because the former Chief of Staff who made the alleged oral promises upon which these Plaintiffs predicate their claim was not a party to their employment contract; and (2) that Plaintiffs are not entitled to an issuance of an order of mandamus compelling Defendants to appoint them to "permanent" positions (which is the remedy they seek in Count I of their Complaint) as a matter of law. As to Plaintiff Jun's discrimination claims in Count IV, Defendants contend that Plaintiffs have not established a *prima facie* case of either sex or race discrimination with regard to Defendants refusal to appoint Plaintiff Jun to a permanent position, and even if Plaintiffs have established a *prima facie* case, Defendants have articulated a legitimate non-discriminatory reason for not appointing Jun to a permanent position and Plaintiffs have not shown that Defendants' reason was a pretext for discrimination.

On February 13, 1991, Plaintiffs filed Briefs in Opposition to both of Defendants' January 14, 1991 Motions.[3]

## IV. FACTUAL BACKGROUND

### A. THE FUNCTIONS OF THE VA DEPARTMENT OF MEDICINE AND SURGERY

The Department of Medicine and Surgery of the Veterans Administration was established by Congress in 1945.

The "primary" function of the Department of Medicine and Surgery is the provision of complete medical and hospital service for the care and treatment of veterans. 38 U.S.C. § 4101(a). In furtherance of this primary function, the Veterans Administration is statutorily authorized to employ physicians and other medical personnel to staff the various departments of the VA hospitals and medical centers. *See* 38 U.S.C. §§ 4104 and 4114.

Physicians in the VA Department of Medicine and Surgery fall into one of three categories: (1) permanent appointees under 38 U.S.C. § 4104 who have completed a two-year probationary period; (2) permanent § 4104 appointees who are serving their two-year probationary period under 38 U.S.C. § 4106; and (3) physicians who are employed either full-time or part-time pursuant to temporary appointments under 38 U.S.C. § 4114.

Section 4114(a)(3)(A) provides that temporary full-time appointments of physicians may exceed 90 days if the Chief Medical Director finds that circumstances render it impracticable to obtain necessary services through permanent appointments under 38 U.S.C. § 4104(1). Pursuant to statutory authority, the Veterans Administration's Department of Medicine and Surgery has promulgated implementing regulations which permit temporary full-time appointments of physicians in excess of 90 days if it is determined by the Chief Medical Director or his designee that such temporary appointments are "in the best interest of the service". These regulations—which are set out in the Veterans Administration

---

**3.** Under Local Court Rule 17(g), these responses were due on January 29, 1991, but were not filed until February 13, 1991.

Manual MP–5, Part II, Chapter 2, Paragraph 8(a) and the Department of Medicine and Surgery Supplement to the Veterans Administration Annual MP–5, Part II, Chapter 2, Paragraph 2.08—permit temporary full-time appointments to extend for a period of up to three years, with the possibility of renewal for another period not exceeding three years.

To the extent feasible without interfering with the primary function, the VA Department of Medicine and Surgery is also required to develop and carry out a program of medical education and research. 38 U.S.C. § 4101(b) and § 4101(c)(1). Pursuant to this "secondary" education and research function, the Administrator is statutorily authorized to establish advisory committees ("Dean's Committees") to provide advice regarding policies that foster education and research programs, including policies relating to professional VA medical center staffing. 38 U.S.C. § 4112(b).

The Veterans Administration Medical Center in Allen Park, Michigan is associated with the Wayne State University Medical School as part of its program of education and research and has established a "Dean's Committee" to assist it in furthering its education and research function.

In December 1986, the Allen Park VA Hospital, with the assistance of its Dean's Committee, promulgated criteria for Allen Park VA Hospital staff appointments. These criteria reflect an effort to upgrade the quality of the medical staff and strengthen the Allen Park VA's contribution to the medical school's education program. The "Dean's Committee Criteria" govern temporary and permanent physician appointments at the Allen Park VA. Under the Dean's Committee Criteria, "permanent" physician appointments are limited to those candidates who have either received merit review research funding or can reasonably be expected to make a substantial research or administrative contribution.

**B. THE PLAINTIFFS AND THEIR TERMS OF EMPLOYMENT AT THE ALLEN PARK VA HOSPITAL**

(1) Dr. Barbara Woods

Plaintiff Barbara Woods was hired on October 3, 1982 as a temporary full-time physician in ambulatory care at the Allen Park VA Hospital. According to the Affidavit of Elaine Marten, the Assistant Personnel Officer at the Allen Park VA Hospital, and the employment records attached as exhibits to Defendants' Motions, Dr. Woods was employed pursuant to 38 U.S.C. § 4114(a)(1)(A), a temporary appointment not to exceed three years. On July 24, 1983, Dr. Woods requested a conversion to part-time status. This conversion was granted and she alternated between full-time and part-time status until April 25, 1985.

From May 26, 1985 until July 25, 1989, Dr. Woods received successive temporary appointments not to exceed thirteen months each. On July 13, 1989, she requested conversion to permanent status. This request was reviewed by the Professional Standards Board and denied for failure to meet the criteria for permanent appointment promulgated by the VA Hospital's Dean's Committee. Dr. Barbara Woods' temporary appointment expired on July 25, 1989 and was not renewed.

(2) Dr. Luz Mary Aquino

Plaintiff Luz Mary Aquino was hired as a temporary full-time physician in ambulatory care at the Allen Park VA Hospital on February 25, 1985. Like Dr. Woods, Dr. Aquino was employed pursuant to 38 U.S.C. § 4114(a)(1)(A), a temporary appointment not to exceed thirteen months. Since that time, Dr. Aquino has received successive temporary appointments not to exceed thirteen months each. On July 13 1989, her request for conversion to permanent status was considered by the Professional Standards Board and turned down for failure to satisfy the criteria for permanent appointment established by the VA Dean's Committee. She continues to work full-time at the Allen Park VA Hospital under her last temporary appointment.

**(3) Dr. Arlene Young Jun**

Plaintiff Arlene Young Jun was hired as a temporary full-time physician in ambulatory care at the Allen Park VA Hospital on July 1, 1986. She, like her co-plaintiffs, was employed pursuant to 38 U.S.C. § 4114(a)(1)(A), a temporary appointment not to exceed thirteen months. Since that time, Dr. Jun has received successive temporary appointments not to exceed thirteen months. Like her co-plaintiff, Dr. Aquino, on July 13, 1989, she requested and was denied conversion to permanent status by the Professional Standards Board for failure to meet the criteria of the VA Dean's Committee.

It is undisputed that at the time that each of the Plaintiffs were hired, and at the time of each of their appointment renewals, they were notified in writing that they were employed as temporary full-time appointees under 38 U.S.C. § 4114(a). It is also undisputed that at the time of each of the Plaintiffs' respective applications for "permanent" status, none of the Plaintiffs had administrative positions or merit review funding or research. They, however, all contend that they were wrongfully denied conversion of their temporary appointments to permanent ones.

## V. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT

The standards governing a trial court's consideration of motions for summary judgment were redefined by the United States Supreme Court in three 1986 cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit expressly adopted this "new era" in summary judgment practice in its recent decision in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989), and delineated in that case the principles extracted from the 1986 Supreme Court trilogy and their progeny that are to guide trial courts in this circuit in deciding motions for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.*, the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to estab-

lish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

886 F.2d at 1478–1480 [footnotes omitted].

The Court will decide the motions before it by application of the foregoing principles.

### B. PLAINTIFFS' CLAIM OF VIOLATION OF 38 U.S.C. § 4114(a)(3)(A) (COUNT I)

In Count I of the Complaint, Plaintiffs contend that Defendants have violated the statutes governing temporary full-time appointment to VA positions.

#### 1. *The Pertinent Statutes and Regulations*

As explained above, VA positions in the Department of Medicine and Surgery can fall into three relevant categories. The first category consists of permanent appointments pursuant to 38 U.S.C. § 4104(1),[4] made after completion of a two-year probationary period. These permanent appointees are accorded peer group disciplinary board review of grievances with notice and hearing. 38 U.S.C. § 4110. The second category of physicians consists of permanent appointees under 38 U.S.C. § 4104(1) who are still serving their two-year statutory probationary period under § 4106(b). The appointees on probation have lesser rights connected with board review. 38 U.S.C. § 4106(d). The third category consists of temporary appointees made pursuant to 38 U.S.C. § 4114(a)(1)(A). These temporary appointees have no board review grievance rights and are subject to termination at-will.

It is the interpretation and application of the temporary full-time appointment provisions of 38 U.S.C. § 4114 and the VA implementing regulations regarding this statute that are at issue in this matter.

Section 4114(a) provides, in pertinent part:

(a)(1) The Administrator, upon the recommendation of the Chief Medical Director, may employ, without regard to civil service classification laws, rules, or regulations—

(A) physicians, dentists, podiatrists, optometrists, nurses, physician assistants, expanded-function dental auxiliaries, certified or registered respiratory therapists, licensed practical or vocational nurses, pharmacists, occupational therapists, dieticians, social workers, librarians, and other professional clerical, technical and unskilled personnel (including interns, residents, trainees, and students in medical support programs) on a temporary full-time, part-time or without compensation basis. . . .

\* \* \* \* \* \*

(3)(A) *Temporary full-time appointments of physicians*, dentists, podiatrists, optometrists, nurses, physician assistants and expanded-function dental auxiliaries *may exceed ninety days only if the Chief Medical Director finds that circumstances render it impracticable to obtain the necessary services through [permanent] appointments under paragraph (1) of subsection 4104 of this title.* Temporary full-time appointments of persons who have successfully com-

---

**4.** Section 4104 provides, in pertinent part:

There shall be appointed by the Administrator additional personnel as the Administrator may find necessary for the medical care of veterans, as follows:

(1) Physicians, dentists, podiatrists, optometrists, nurses, physician assistants, and expanded-function dental auxiliaries. . . .

38 U.S.C. § 4104(1).

The parties do not dispute, and it appears to be universally accepted, that Section 4104 appointments are "permanent" appointments.

pleted a full course of nursing in a recognized school of nursing, approved by the Administrator, and are pending registration as a graduate nurse in a State, shall not exceed two years. Temporary full-time appointments of other personnel shall not exceed one year except as authorized in subparagraph (D) of this paragraph.[5]

38 U.S.C. § 4114(a)(1), (3)(A). [Emphasis and footnote added.]

38 U.S.C. §§ 4108 and 4115, authorizes the Chief Medical Director to promulgate regulations prescribing "the hours and conditions of employment ... of physicians" and "all regulations necessary to the administration of the Department of Medicine and Surgery consistent with existing law". The Chief Medical Director has promulgated such "implementing regulations", and they are set forth in the Veterans Administration Manual MP–5 and the Department of Medicine and Surgery Supplement to VA Manual MP–5.[6]

Section 11(a)(1) of Chapter 2 of Part II of the MP–5 Manual provides:

a. Temporary Full–Time

(1) Individuals appointed to occupations identified in 38 U.S.C. 4104(1) and 4104(3), such as *physicians*, dentists, podiatrists, optometrists, nurses, nurse anesthetists, PAs, EFDAs, RTs, PTs, LPNs, OTs and pharmacists *may be appointed under 38 U.S.C. 4114(a)(1)(A) provided the Chief Medical Director or an official designated by the Chief Medical Director determines it is impractical to obtain necessary services under authority of 38 U.S.C. 4104(1) or 4104(3).*

[Emphasis added.]

Section 2.08 of the Department of Medicine and Surgery Supplement to VA Manual MP–5 details § 4114(a) temporary full-time appointments of physicians. In pertinent part, section 2.08 provides:

a. General. Temporary full-time appointments of physicians, dentists and nurses are made under the authority of section 4114(a)(1)(A). *These appointments may be made when it is determined that they are in the best interest of the service.*

\* \* \* \* \* \*

b. Duration of Appointments. Temporary full-time appointments *may be made for any period of time up to 3 years depending on the needs of service. Such appointments may be renewed;* however, when the aggregate period of service will exceed 3 years, approval of the facility Director is required for physicians and nurses.... The aggregate period of temporary service will not exceed 6 years.

[See p. F–13 of Ex. A–2 of the Brief in Support of Defendants' initial Motion for Summary Judgment.]

Section 9 of the MP–5 Manual further provides for the Chief Medical Director's appointment of Dean's Committees and other such medical advisory committees to "make recommendations regarding the selection of full-time and part-time physicians ... in VA installations." [See p. A–11 of Ex. A–1 of the Brief in Support of Defendants' initial Motion for Summary Judgment.]

The Allen Park VA Hospital has established such a "Dean's Committee", and that Committee has promulgated "Criteria for VA Staff Appointments" which have been adopted and followed by the Allen Park VA Hospital administration.

The Allen Park VA Dean's Committee Criteria for VA Staff Appointments provide, in pertinent part, as follows:

I. Introduction:

These criteria represent an effort by the Allen Park VA Medical Center to

---

**5.** Subparagraph (D) of § 4114(a)(3) governs temporary full-time appointments of psychologists, respiratory therapists, physical therapists, licensed practical or vocational nurses, pharmacists and occupational therapists.

**6.** Because these regulations pertain to internal agency management matters, they do not have to be published in the Code of Federal Regulations. *See* 5 U.S.C. § 553(a)(2).

upgrade the quality of its medical staff. These criteria are to be used to evaluate candidates for staff appointments keeping in mind that the criteria are guidelines that should be regarded as advisory rather than binding, and that the ultimate responsibility for selecting medical staff to carry out the mission of the VA lies with the VA Chief of Staff. The onus of justifying the appointment of candidates with significantly different qualifications rests with the VA Service Chief and/or WSU Department Chairperson.

II. Types of Appointments

There are two VA appointing authorities for Title 38 employees who include physicians and dentists:

A. *Permanent*—Full-time employees appointed under 4104(1) who enjoy the VA equivalent of tenure.

B. *Temporary*—Part-time or full-time employees appointed under 4114(a)(1)(A), who can be terminated at any time, subject only to two weeks notice.

III. Permanent Appointments: *The recommendation is that these be limited to candidates in the following categories:*

A. Merit Review funded investigators transferring from other VA Medical Centers, whose research support is transferred to Allen Park, *or*

B. *conversions from Allen Park staff currently holding temporary appointments, who have obtained Merit Review funding, or*

C. *exceptional individuals, who by virtue of their previous experience and performance, can reasonably be expected to make a substantial research or administrative contribution. Candidates in this category should be limited in number and subjected to particularly close scrutiny.*

[Ex. A–3 of Defendants' Brief in Support of their initial Motion for Summary Judgment. Emphasis added.]

Plaintiffs do not contend, as the basis of Count I in their Complaint, that Defendants failed to comply with the foregoing regulations and Dean's Committee criteria in connection their respective initial appointments, renewals or subsequent unsuccessful applications for conversion to "permanent" employment status. Indeed, Plaintiffs do not dispute that Defendants followed the above-quoted provisions of the regulations and Dean's Committee criteria with respect to each of them.

Rather, Plaintiffs' contention is that the regulations permitting temporary full-time appointments for renewable terms of "up to three years" violates § 4114(a)(3)(A) in that the language of the statute is that temporary full-time appointments are "not to exceed 90 days", unless the Chief Medical Director finds that it is impracticable to obtain their services through permanent § 4104 appointments. Plaintiffs' argument is that the statute requires the Chief Medical Director to specifically enunciate a "finding of impracticability" as to each of the individual Plaintiffs' particular positions at the Allen Park VA Hospital in order for each them to have been hired and retained for more than 90 days. Since the Chief Medical Director did not make such a personal position-particularized finding of impracticability, notwithstanding the Chief Medical Director's explicit statutory authority to promulgate internal administrative implementing regulations, the MP–5 Supplement's regulations permitting temporary full-time appointments for renewable terms of up to three years—under which "up to three years" provision each of the Plaintiffs were hired (and under which more–than–90–day–terms each of the Plaintiffs retained their jobs)—are invalid. They further contend that since they each were employed for more than two years, they have each completed the statutory "probationary period" provided for in § 4106(b), and, therefore, an invalidation of the "renewable terms of up to three years" regulation automatically requires that they be made "permanent" § 4104 appointees.

Defendants counter that the Chief Medical Director is not required to personally

make individual position-particularized findings of impracticability and that he has "implicitly" made a finding that it is impracticable to fill VA physicians' positions with permanent appointments by promulgating regulations providing for temporary full-time appointments for renewable periods of up to three years. They further argue that inasmuch as the regulations providing for temporary full-time appointments of up to three years are not inconsistent with the legislative intent underlying the statutory provisions concerning VA medical center staffing set forth in Title 38—including § 4114(a)'s provisions concerning temporary full-time appointments—the Court should not declare the regulations, or Plaintiffs' appointments in accordance therewith, to be invalid.

Lastly, Defendants contend that even if the temporary full-time appointment regulations are invalid, there is nothing in the VA hiring statutes or in the legislative history of these statutes to support Plaintiffs' contention that an invalidation of the regulations regarding temporary full-time appointments automatically entitles Plaintiffs to appointment to permanent § 4104 positions.

### 2. *Plaintiffs Lack "Standing" to Challenge the Validity of the VA Regulations*

As a threshold matter, the Court must determine whether Plaintiffs have established—as required under Article III of the Constitution—that they have "standing" to challenge the validity of the VA's "up to three years" temporary full-time appointment regulations. It is fundamental that "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982).

A fundamental tenet of the "standing" doctrine is that one who challenges the validity of a statute or regulation must be injured or harmed by that statute or regulation. This test generally has required a two-fold showing: (1) a distinct and palpable injury to the plaintiff; and (2) a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 78–79, 98 S.Ct. 2620, 2633–34, 57 L.Ed.2d 595 (1978).

Although neither Plaintiffs nor Defendants directly addressed the "standing" issue in their Briefs, at the March 7, 1991 hearing on these four dispositive motions, the Court raised its concern that because the undisputed facts of this case do not demonstrate that Plaintiffs have been "harmed" by application of the regulations to them in connection with their VA employment, it appeared that Plaintiffs may lack standing to challenge disputed regulations. Therefore, at the Court's request, the parties' attorneys presented oral arguments on this issue at the March 7, 1991 hearing.

Defendants' counsel agreed with the Court that Plaintiffs have not been prejudiced, injured or otherwise harmed by application of the "up to three years" temporary full-time appointment terms regulations with respect to their having initially been hired—and subsequently retained under successive renewals—for thirteen-month and three-year terms. Quite the contrary, Plaintiffs *benefitted* from, rather than having been "harmed" by, terms of employment longer than the 90–day term they argue that the statute mandates. As Defendants' counsel pointed out at the March 7 hearing, if the 90–day statutory provision were to be given strict construction and the "up to three years" regulation declared invalid, Plaintiffs would have been out of a job after working only 90 days. By the Allen Park VA's following of the "up to three years" regulation, Plaintiffs were given a much longer term of employment, and hence, they "benefitted" from, rather than being harmed by, the regulation.

As legal support for their argument, Defendants' counsel referred the Court to Defendants' Brief in support of their initial Motion for Summary Judgment, in which Defendants argued that if the regulations were to be declared invalid and the 90–day statutory provision given absolute mandatory effect, Plaintiffs' employment would have had to have been terminated after they served their initial 90–days on the job. In particular, Defendants' counsel referred the Court to their citation of *Aggarwal v. United States*, 1987 WL 14128, 1987 U.S. Dist. LEXIS 8334, No. 84 Civ. 7118 9/14/87 Slip Op. (S.D.N.Y.1987). In that case, the court held that the plaintiff's § 4114 temporary full-time appointment for a three-year term pursuant to the implementing regulations did not convert her "temporary" appointment to a "permanent" one under § 4104. In reaching its conclusion, the *Aggarwal* court explained,

> "Even were Aggarwal to convince the Court that her employment exceeded the permissible [statutory 90–days] duration, the remedy for such a violation would appear to be termination rather than granting permanent status."

Slip Op. at p. 5.

With respect to Plaintiffs' argument on the "standing" issue, despite the Court's repeated requests at the March 7, 1991 hearing to Plaintiffs' counsel to explain what "harm" or "injury" his clients have suffered to establish that they have standing to challenge the validity of the regulations, all that Plaintiffs' counsel offered was his assertion, "If my clients don't have standing [to challenge the regulations], then I don't know who does." Without any factual support, Plaintiffs' counsel merely argued that this longer–than–90–day temporary full-time employment practice is "going on nation-wide" and "someone has to stop the VA [from continuing to violate the statute]." However, he never did proffer any facts from which it could be inferred that the three individual Plaintiffs in this case have been "harmed".

The United States Supreme Court has repeatedly held that it is not enough to invoke the power of judicial review for a plaintiff to show that a statute or regulation is invalid. Rather, as noted above in this Opinion, in order to establish that a plaintiff has "standing" sufficient to satisfy the "case and controversy" requirement of Article III of the Constitution, he must establish that he, personally, has suffered, or is in immediate danger of suffering, a direct, concrete injury as a result of the action challenged as unlawful. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra*, 102 S.Ct. at 765–766; *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 2930–2936, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 2947–2948, 41 L.Ed.2d 678 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972); *Ex parte Levitt*, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Abstract injury, or injury to others is not enough. *Schlesinger v. Reservists, supra. See also, O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

The *Schlesinger* Court explained the reasons for, and the policy underlying, the "direct, concrete injury" requirement:

> Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance. Such authoritative presentations are an integral part of the judicial process, for a court must rely on the parties' treatment of the facts and claims before it to devel-

op its rules of law. Only concrete injury presents the factual context within which a court, aided by parties who argue within the context, is capable of making decisions....

[T]he requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily.... First, concrete injury removes from the realm of speculation whether there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.

> "The desire to obtain sweeping relief cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual needs requires the remedy for which he asks...."

Second, the discrete factual context within which the concrete injury occurred or is threatened insures the framing of relief no broader than required by the precise facts to which the court's ruling would be applied....

To permit a complainant who has no concrete injury to require a court to rule on ... issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing "government by injunction."

94 S.Ct. at 2932–2933 (citations omitted).

■ After reviewing the parties' Briefs and having heard the oral arguments of the parties, this Court concludes that even if the Court were to find that Plaintiffs are correct in their assertion that the VA Department of Medicine and Surgery's implementing regulations permitting temporary full-time § 4114(a) appointments for renewable terms of up to three years are invalid, Plaintiffs have not demonstrated, and are not able to demonstrate, that they have suffered any direct, concrete injury as a result of their having been hired and retained as temporary full-time VA physi-

cians for thirteen-month and three-year renewable terms under the VA implementing regulations rather than for one 90–day term as provided in the statute. The Court agrees with Defendants that Plaintiffs have actually *benefitted* from, rather than having been injured by, application of the regulations to their employment.

In this regard, the Court finds Plaintiffs position to be substantially similar to that of the plaintiff in *San Diego Employment and Training Consortium v. Marshall,* 633 F.2d 862 (9th Cir.1980). In the *San Diego* case, the plaintiff was a consortium of San Diego County and several cities in the County, including the City of San Diego. The Department of Labor found that the consortium violated CETA [7] regulations because it had hired a disproportionate number of residents of the City of San Diego to fill CETA jobs. The plaintiff argued that because CETA and the regulations issued under its authority restrict CETA jobs to residents, they require the States or their political subdivisions to discriminate against residents of other states. The court held that the plaintiff had no standing to make this argument because it found that the regulations did not harm, but rather benefitted San Diego County and the residents of its cities. The court explained:

> "To challenge government action in federal court, a plaintiff must have been 'injured in fact.' " [Citation omitted.] Here, Petitioner suffers no injury from the restrictions on hiring out-of-state residents.

633 F.2d at 863.

As explained above, Plaintiffs' counsel only offered as support for a determination that his clients had standing to challenge the validity of the VA regulations his assertion that, "If my clients don't have standing, I don't know who does." The United States Supreme Court has repeatedly explicitly rejected this very argument.

In *Valley Forge Christian College v. Americans United for Separation of*

---

**7.** The Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.*

*Church and State, Inc., supra,* the Supreme Court unequivocally stated:

> [T]he assumption that if respondents have no standing to sue, no one would have standing is not a reason to find standing.

102 S.Ct. at 767, *quoting, Schlesinger v. Reservists Committee to Stop the War, supra,* 418 U.S. at 227, 94 S.Ct. at 2935.

In *United States v. Richardson, supra,* the Court explained in detail why the respondent's "if I can't litigate this issue, then no one can" argument in that case was without merit:

> It can be argued that if respondent is not permitted to litigate this issue, no one can do so. In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process.... Lack of standing within the narrow confines of Art. III jurisdiction does not impair the right [of respondent] to assert his views in the political forum or at the polls. Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them.
>
> As our society has become more complex, our numbers more vast, our lives more varied, and our resources more strained, citizens increasingly request the intervention of the courts on a greater variety of issues than at any period of our national development. The acceptance of new categories of judicially cognizable injury has not eliminated the basic principle that to invoked judicial power the claimant must have a "personal stake in the outcome," ... or a "particular, concrete injury," ... or "a direct injury," ...; in short, something more than "generalized grievances."

94 S.Ct. at 2947–2948 (citations omitted).

For all of the foregoing reasons, the Court finds that Plaintiffs lack standing to challenge the validity of the VA implementing regulations at issue in this case.

3. *The Regulations are not Inconsistent with the VA Hiring Statutes or their Legislative History*

■ Even if the Court were constrained to find that Plaintiffs have standing to challenge the validity of the VA regulations relating to temporary full-time physician appointments, there is no support in the statutes comprising Chapter 73 of Title 38, or in the legislative history of the statutes, for Plaintiffs' contention that the regulations are in violation of the statutory provisions governing the VA's hiring of medical and surgical personnel, or for their contention that their "temporary" positions should be automatically converted to "permanent" appointments.

As set forth above, the implementing regulations permit temporary appointment of physicians for periods not exceeding three years, with possible renewals for periods not to exceed three years. Plaintiffs contend that § 4114(a)(3)(A) requires that for temporary full-time appointments to exceed 90 days, there must be a separately proffered and explicitly stated "finding" by the Chief Medical Director[8] that "circumstances render it impracticable" to fill the positions that Plaintiffs had with permanent appointments. They contend that no such finding was ever made with regard to their particular positions, and that in the absence of an explicit § 4114(a)(3)(A) "finding that it is impracticable" to fill these positions by tenured appointments, their positions must be deemed to be 38 U.S.C. § 4104 "permanent" appointments. The statute at issue does not define the phrase "a finding by the Chief Medical Director".

---

**8.** The "Chief Medical Director" is the *national* director of the VA Department of Medicine and Surgery. The Chief Medical Director is in charge of the entire Department of Medicine and Surgery and is directly responsible to the Administrator of the Veterans Administration. *See* 38 U.S.C. §§ 4101–4103.

As a starting point, the Court notes that in reviewing an administrative interpretation given a statute by the enforcing agency, the agency interpretation is entitled to deference. *See, Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). *See also, Orloff v. Cleland,* 708 F.2d 372 (9th Cir.1983) (rejecting the plaintiff's contention that the language in § 4114(a) excluding appointments under that section from "civil service or classification laws, rules or regulations" should be construed to preclude only application of civil service "classification" laws and not the just-cause termination and notice and hearing provisions of the Veterans Preference Act (which was formerly administered by the Civil Service Commission) because the applicable regulations list § 4114(a) appointments as one of the statutes not covered by the Veterans Preference Act).

As the Supreme Court instructed in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982),

[W]here the statute's language seem[s] insufficiently precise, the natural way to draw the line is in light of the statutory purpose.... The axiom that courts should endeavor to give statutory language that meaning that nurtures the policies underlying legislation is one that guides us when circumstances not plainly covered by the terms of a statute are subsumed by the underlying policies to which Congress committed.

*Id.* at 517–518, 102 S.Ct. at 1203 (citations omitted).

This Court agrees with Defendants that the legislative history of § 4114 evidences a congressional intent not to tie the hands of the VA administration to limit temporary appointments, as Plaintiffs argue, to periods not to exceed 90 days.

Both the House and Senate Reports on the amendments made to § 4114 in 1962 establish that by amending § 4114(a)(3)(A) to permit temporary full-time appointments in excess of 90 days Congress intended to accord the Department of Medicine and Surgery greater flexibility in making such appointments, rather than as Plaintiffs contend to narrow application of the statute.

The House Report demonstrates this "more flexibility" intent:

Section 4 would also relax the 90 day limitations upon temporary full time appointments under § 4114(a) as it relates to physicians, dentists, and nurses, if the Chief Medical Director finds that circumstances render it impracticable to obtain the necessary services through career appointments. *Experience has shown that this [90 day limitation] provision to be too restrictive in certain cases in view of the continuing shortage of physicians, dentists, and nurses.* For example, *this amendment will permit the Department of Medicine and Surgery to attract the services of specialists and other highly qualified personnel who are not interested in career appointments but are unwilling to enter into a temporary appointment of 90 days or less.* We have reason to believe that many of these person would be willing to accept longer temporary appointments for work in particular fields of medicine or on specific research problems. The 90 day limitation upon temporary and full time appointments would be retained without exception with respect to all other types of personnel appointed under this section....

House of Representatives No. 87–1463, 87th Congress, 2nd Session 3–4 (1962). *See also,* Senate Report No. 87–1693, 8th Congress, 2nd Session 5 (1962), reported at 1962 U.S.Code Cong. & Admin.News 2101, 2103–2104, which echoes the House Report.

The 1962 debates on amendment of § 4114 were not the first time that Congress voiced its concern regarding tying the hands of the Veterans Administration with respect to staffing. In reviewing the legislative history of Chapter 73 of Title 38—of which § 4114 is now a part—the court in *Quilico v. Kaplan,* 749 F.2d 480 (7th Cir.1984), noted that in 1945, while responding to allegations of poor care in the VA hospitals, Congress abolished the permanent medical staff which had staffed the VA hospitals up until that time and created the Department of Medicine and Surgery, whose regulations are squarely at

issue in this case. *Id.* at 485, *citing,* 91 Cong.Rec. 11,656–70. It was then that the legislature divided physicians into "career" appointments and those who accepted "temporary" assignments. *Id.* Provision was made for the appointment of temporary "non-career" physicians, partly because the VA was unable to compete financially with the private sector for the services of specialists, and because such appointments would enhance the VA's ability to develop affiliations with universities and medical schools to establish in-house research and teaching programs, *id.,* such as that in place at the Allen Park VA Hospital in conjunction with Wayne State University.

The 1945 House debates regarding the abolishment of "permanent" medical staffs and the creation of a two-tiered physician staff consisting of both "career" and "temporary" appointees under the Department of Medicine and Surgery further demonstrate the unsupportability of any contention that the 90–day limitation in § 4114 was included in the statute to protect the rights of the doctors. Quite the contrary, the House debates make it clear that Congress' intent underlying all of the legislation that is now codified in Chapter 73 of Title 38 was to protect rights of the VA patients by providing means to attract "a better class of doctors". This intent is evidenced by the comments of Representative Cunningham, a member of the Veterans' Committee who presented the original 1945 Department of Medicine and Surgery legislation to the full House:

> [T]he Veterans' Committee *is not interested in the doctor, it is not interested in the nurse, it is not interested in the employees of the hospital,* but it is interested in the veteran, the boy in the bed who needs the service; \* \* \* and we are trying to make the service sufficiently attractive in the hospitals to draw a better class of doctors....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> I am aware that certain groups, organizations, and individuals may not like certain provisions of this measure, but when we legislate for veterans I say we

should legislate for them and no one else. No matter how much particular individuals on the outside [of this class] may be hurt, we should consider this legislation purely from the standpoint of the veteran. Your committee, I submit, has reported to you a veterans' bill....

91 Cong.Rec. 11659–11660 (daily ed. Dec. 7, 1945) (statement of Rep. Cunningham).

Despite the fact that the legislative history demonstrates a Congressional intent to provide the VA and its Department of Medicine and Surgery greater flexibility regarding staffing, Plaintiff disputes that "flexibility" was the intent of Congress with regard to § 4114(a)(3)(A).

### 4. *Plaintiffs' Argument that Congress Intended "Tight Restrictions" on Extensions of 90–Day Temporary Full–Time Appointments is Without Merit*

■ Plaintiffs argued in their Briefs and at oral argument that the plain language of § 4114(a)(3)(A) demonstrates that Congress intended "tight restrictions" on extensions of 90–day temporary full-time appointment terms because the statute provides that it is "only" when the Chief Medical Director himself makes a finding of impracticability that the 90–day statutory limitation of temporary full-time appointments may be extended.

Although the Court admits that § 4114(a)(3)(A) is not the most artfully-drafted statutory provision, by tracking the legislative development of that section, it is clear that the "only" in the current language of § 4114(a)(3)(A) was not intended to modify the language following that word (i.e., the "if the Chief Medical Director finds that circumstances render it impracticable" language), but rather was intended to limit the classes of employees (i.e., physicians, dentists, podiatrists, optometrists, etc.) for whom temporary full-time terms may be extended beyond 90–days. The language of § 4114(a) at the time of the 1962 amendments makes this clear.

Following the 1962 amendments, the statute read as follows:

> (a)(1) The Administrator, upon recommendation of the Chief Medical Director,

may employ, without regard to civil service or classification laws, rules, or regulations—

(A) physicians, dentists, nurses, dietitians, social workers, librarians, and other professional clerical, technical, and unskilled personnel (including interns, residents, trainees, and students in medical support programs) on a temporary full-time or part-time basis....

\*   \*   \*   \*   \*   \*

(3)(A) Temporary full-time appointments of physicians, dentists and nurses may exceed ninety days only if the Chief Medical Director finds that circumstances render it impracticable to obtain the necessary services through appointments under paragraph (1) of section 4104 of this title. Temporary full-time appointments of all other personnel [i.e., the other personnel listed in § 4104(a)(1)(A) ] shall not exceed 90 days.

P.L. 87–574, 76 Stat. 308, reported in 1962 U.S.Code Cong. & Admin.News 375–376.

In the years since 1962, the above-quoted portions of § 4114(a) have been amended to add additional classes of medical personnel, but the word "only" has never been set off by punctuation so as to indicate that it was intended to modify the language following it making the extension of 90–day terms dependent exclusively upon the Chief Medical Director's personal, explicit "finding".

Moreover, for this Court to adopt Plaintiffs' argument that an express "finding" of impracticability must be made "personally" by the Chief Medical Director, it would have to ignore the express statutory authority granted to the Chief Medical Director to promulgate regulations, and the plain language in the regulations he promulgated provide that a "determination" of impracticability can be made by "the Chief Medical Director *or his designee*". *See,* Section 8(a) of the VA MP–5 Manual, p. A–10, attached as Ex. A–1 of Defendants' initial Brief.

**5. *There is no Support for Plaintiffs' Contention that they are Entitled to "Automatic" Conversion of their § 4114(a) Temporary Full–Time Appointments to Permanent § 4104 Appointments***

Plaintiffs also argue that in absence of an explicit position-particularized "finding" by the Chief Medical Director, their appointments must be deemed to fall under the "permanent", post-probationary provisions of 38 U.S.C. §§ 4104 and 4106(b). Although Plaintiffs contend that the legislative history and the statute read together call for the "automatic" conversion of their "temporary" status to "permanent" status, the Court finds nothing in either the legislative history or the statute to support this contention.

The gist of Plaintiffs argument in this regard is that the legislative history addresses Congress' desire to attract "qualified medical personnel who are not interested in career appointments", but that none of the Plaintiffs in this case hired into the VA because they desired something less than a career appointment. Yet it is undisputed that Plaintiffs were informed of the temporary nature of their employment at the time that they hired into the VA. The Notification of Personnel Action that each Plaintiff received when they were hired provides that they were each employed under the "Authority" of "38 U.S.C. 4114/A/1/A" and the duration of the terms of each of their temporary appointments and renewals thereof was explicitly provided on the personnel action forms. [See Exhibits A–4 through A–8 of Defendants' Brief in Support of their initial Motion for Summary Judgment.]

■ Plaintiffs essentially contend that because they were not discharged during the first two years of their employment, they must be deemed to have completed the probationary period called for by 38 U.S.C. § 4106(b),[9] and, therefore, are automatical-

---

**9.** Section 4106(b) provides:
  Such appointments as described in subsection (a) of this section shall be for a probationary period of two years and the record of each person serving under such appointment in the Medical, Dental, and Nursing Services shall be reviewed from time to time by a board, appointed in accordance with regulations of

ly entitled to conversion to "permanent" full-time status. There is no support in the legislative history of the VA hiring statutes or in the statutes themselves for Plaintiffs' "automatic conversion" contention.

Moreover, Plaintiffs' reliance on § 4106(b) completion of probationary period provisions misguided and read out of context. The plain language of Section 4106(b) [see footnote 6] requires that it be read in conjunction with Section 4106(a), which provides:

> [Permanent] appointments of physicians, dentists, podiatrists, optometrists, and nurses shall be made *only after qualifications have been satisfactorily established in accordance with regulations prescribed by the Administrator,* without regard to civil-service requirements.

As noted above, the Allen Park VA Dean's Committee Criteria, adopted in accordance with the regulations "necessary to the administration of the Department of Medicine and Surgery" and set forth in the MP–5 Manual and its Supplement, provide that "permanent" appointments at the Allen Park VA be limited to candidates who have obtained Merit Review funding or can be reasonably expected to make a substantial research or administrative contribution.

Additionally, the amendment to § 4114 allowing the appointment of full-time temporary positions for periods in excess of 90 days, *post-dates* the date of enactment of § 4106, therefore, this Court construes to the two sections of Title 38 to be mutually exclusive.

Furthermore, as set forth in the Affidavit of Elaine Marten, the Acting Chief of Personnel at the Allen Park VA Hospital, and the exhibits attached thereto, permanent appointments are not, as Plaintiffs contend, the "norm". More than half of the physicians at the Allen Park VA are employed under "temporary" appointments, and only one doctor in ambulatory care—the department in which Plaintiffs worked—has a "permanent" appointment. In fact, Defendant Boaz Milner, Plaintiffs'

supervisor, does not even have a "permanent" appointment. [See Ex. B of Defendants' Brief in Support of Summary Judgment on Count IV.]

Case law construing the language in § 4114(a)(3)(A), or addressing the question of whether after satisfactory completion of two years as a "temporary" full-time VA physician, the doctor's employment automatically converts to a "permanent" appointment, is sparse. And, the Court, like the parties, has found only one case, *Aggarwal v. United States,* 1987 WL 14128, 1987 U.S.Dist. LEXIS 8334 (S.D.N.Y.1987), that addresses the impact of the "three-year renewable temporary appointments" permitted under the regulations set forth in the Supplement to the MP–5 Manual.

In *Aggarwal,* a discharged full-time temporary VA physician hired pursuant to § 4114 brought an action for reinstatement and back pay, contending that she should be deemed a "permanent" employee and, therefore, her termination without any stated reason and without a hearing was wrongful. The Court acknowledges the factual difference between *Aggarwal* and this case—in *Aggarwal,* the plaintiff was not a citizen and 38 U.S.C. § 4105 provides that no person may be appointed as a permanent employee under § 4104 unless that person is a citizen. The Court also notes that Aggarwal was discharged 21 months after she was hired (i.e., short of the two-years of satisfactory work called for under the permanent employee probationary period provisions of § 4106(b)).

What is significant about *Aggarwal* is that the legal argument in that case is *identical* to the issue presented by Plaintiffs' argument here—i.e., whether a hiring for a three-year temporary period violated § 4114(a)(3)(A)'s limitation of temporary appointments to 90 days, and, therefore, mandated the automatic conversion of her temporary appointment to a permanent one. The United States District Court for the Southern District of New York found that it did not:

the Administrator, and if said board shall find such person not fully qualified and satisfac-

tory such person shall be separated from the service.

Aggarwal asserts that temporary appointments under 38 U.S.C. § 4114(a) are limited to ninety days with a single extension for ninety more days and that her employment, having exceeded that duration, was therefor not temporary but permanent. It is specifically provided, however, that temporary appointments may exceed ninety days "if the Chief Medical Director finds that circumstances render it impracticable to obtain the necessary services through appointments under paragraph (1) of section 4104 of this title." 38 U.S.C. § 4114(a)(3)(A). The implementing regulations permit temporary appoints to extend for three years, with the possibility of renewal for an equal period. Accordingly, the duration of Aggarwal's employment beyond ninety or 180 days did not render it permanent.

*Id.*

Therefore, the *Aggarwal* court granted the defendants' motion for summary judgment and denied the plaintiff's cross-motion.

■■■ Based on the foregoing discussion, and in light of Congress' stated intent in adopting and amending § 4114 to upgrade VA medical care, to develop medical education and research affiliations between the VA medical centers and medical schools, and to permit temporary hirings to exceed 90 days, and the absence of any explicit statutory limitation on the manner in which a "finding" of impracticability is to be enunciated, this Court determines, as the *Aggarwal* court found, that the regulations permitting renewable temporary three-year appointments are not inconsistent with or

in violation of the provisions of 38 U.S.C. § 4114(a)(3)(A).

Moreover, as a practical matter, to read the language in § 4114(a)(3)(A), as Plaintiffs argue, to require the Chief Medical Director—a *national* agency official responsible for not only the Allen Park VA Hospital, but for every other VA hospital and medical center throughout the country—to make a specific individual finding with regard to every single temporary physician appointment and each and every renewal thereof, is simply not reasonable and impracticable from the Medical Director's perspective. As Plaintiffs would have the Court read this statute, the Chief Medical Director would be doing nothing other than making such findings day in and day out, and let all other Department matters fall by the wayside. This Court does not believe that that is what Congress intended. The Chief Medical Director has spoken through the Department of Medicine and Surgery's regulations—the department that he heads—and this Court believes that the regulation approach to the "finding" question is reasonable.[10]

Therefore, the Court finds that Defendants reliance upon the regulations and the Criteria for VA Staff Appointments (the "Dean's Committee Criteria") developed in accordance therewith, in making the employment decisions affecting the Plaintiffs in this action was reasonable and justified, and in compliance with the VA hiring statutes.

For all of these reasons, the Court will grant Defendants' Motion for Summary Judgment on Count I of Plaintiffs' Complaint and Plaintiffs' Cross–Motion for Partial Summary Judgment on Count I will be denied.[11]

---

10. Although it may very well be that the VA Department of Medicine and Surgery is taking too much advantage of the temporary full-time appointments provisions in staffing its medical centers, the Court does not believe that this matter should be resolved by the Judiciary; rather this is a matter that should be taken up by the Congress and its oversight Committees, which have the capability of considering the programs nation-wide and the policy issues underlying the VA appointment process.

11. In light of the Court's grant of Defendants' Motion for Summary Judgment on the merits of Count I, it is unnecessary for the Court to reach the issue presented in Defendants' January 14, 1991 Motion to Dismiss regarding the unavailability of an order of mandamus (which is the only relief sought by Plaintiffs in this count) as a remedy in this case. However, in this regard, the Court notes that the remedy of mandamus is available against a federal employee only if the plaintiff's claim is "so plainly prescribed as to be free from doubt" and no other adequate remedy is available. *Stang v. IRS,* 788 F.2d 564,

## C. PLAINTIFFS AQUINO AND JUN'S COMMON LAW BREACH OF CONTRACT CLAIMS (COUNT II)

Plaintiffs Aquino and Jun allege that at the time of their hires, the Allen Park VA's former chief of staff, Dr. Jacobs, promised them permanent status after two years of satisfactory service. The Plaintiffs contend that Dr. Jacobs plainly had the power to accurately represent the terms of their federal employment. They contend that these promises were a material part of their contracts which has been breached by the Defendants failure to make them permanent appointees.

As an initial matter, the Court notes that as VA Hospital employees, Plaintiffs employer is the United States government, not the Allen Park VA Hospital or any the individual-named Defendants.

■ Federal employment is quite distinct from private sector employment. In this regard, the United States is not bound or estopped by the acts of its agents or employees when it enters into an agreement or contract that is governed by explicit statutory provisions. As the court in *Chu v. United States*, 773 F.2d 1226 (Fed.Cir. 1985), explained in affirming the United States Claims Court's grant of the defendant's motion for summary judgment on the plaintiffs common law breach of contract claims in that case:

> [A]bsent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government. *Hayman v. United States*, 590 F.2d 344, 218 Ct.Cl. 729 (1978); *Urbina v. United States*, 428 F.2d 1280, 192 Ct.Cl. 875 (1970); *cf. United States v. Hopkins*, 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (the United States may employ individuals by contract rather than by appointment, where provided for by regulation). In *Shaw v. United States*, 640 F.2d 1254, 226 Ct.Cl. 240 (1981), the court said that

565 (9th Cir.1986). The Court finds that Plain-

> the law is well settled that "public employment does not, * * * give rise to a contractual relationship in the conventional sense." Therefore, *plaintiff may not base his theory of recovery on contract law since he was a federal employee. Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not ipso facto create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.*

773 F.2d at 1229. [Emphasis added.] *See also, Fiorentino v. United States*, 607 F.2d 963 (Court of Claims 1979). *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), a wrongful discharge case filed by a former federal employee in the Department of Housing and Urban Development, in which the court affirmed the trial court's grant of the defendant's motion for summary judgment based, in part, on its determination that the principles of common law or agency with regard to federal employment contracts "cannot override the limitations of express statutes or regulations having the force of statutes." *Id.* at 967.

The *Chu* court's and *Fiorentino* court's analyses of this question is consistent with firmly established precedent. In *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) the Supreme Court held that

> [W]hatever the form of which the government functions, anyone entering into an agreement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by congress or be limited by delegated legislation, properly exercised through the rule making power. And this is so even though as here, the agent himself may have been unaware of the limitations upon his authority.

tiffs, here, have not met this standard.

*Id.* at 384, 68 S.Ct. at 3. See also, *United States v. Lowell,* 557 F.2d 70, 72 (6th Cir. 1977) (affirming the trial court's grant of summary judgment on the plaintiffs' fraud claim based upon its determination that the United States could not be bound nor estopped by acts of its officers or agents); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (oral misrepresentations of a Social Security Administration's field representative not binding on the government); *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (oral misinformation by a government agent cannot be the basis for an estoppel claim).

■ In this case, the alleged formation of a contract through the oral representations of Dr. Jacobs, the former Chief of Staff, is wholly outside the statutory scheme. Pursuant to 38 U.S.C. § 4104, permanent staff appointments may only be made by the Administrator, not the Chief of Staff, and Plaintiffs have presented nothing to establish that Dr. Jacobs had actual authority to make the alleged promise upon which they purport to rely.

Given these facts, and based upon the foregoing legal discussion, the Court will grant Defendants' Motion for Summary Judgment on Plaintiffs Aquino's and Jun's breach of contract claims in Count II.[12]

### D. PLAINTIFF WOODS' VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAIM (COUNT III)

■ Plaintiff Barbara Woods alleges that Defendants' non-renewal of her temporary appointment constitutes a violation of her Fifth Amendment Due Process rights, depriving her of a property interest in continued VA employment. In their Motion for Summary Judgment, Plaintiffs assert that this claim is without merit because there can be no property interest in a temporary appointment, as a matter of law. This Court agrees.

Moreover, Plaintiffs' counsel admitted at the March 7, 1991 hearing that Plaintiff Woods' due process claim is totally dependent upon the Court's finding in Plaintiffs' favor on Count I that Plaintiffs had become "permanent" § 4104 appointees. As set forth above in Section V(B) of this Memorandum Opinion and Order, the Court has determined that Plaintiffs were not, and are not, "permanent" § 4104 appointees. Rather, they were at all times "temporary" § 4114(a) appointees, and as such, their employment was, and is, terminable at-will.

In order to legitimately invoke constitutional protection of a property interest, the plaintiff must have a "legitimate claim of entitlement to her job." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *McMurphy v. City of Flushing,* 802 F.2d 191, 197 (6th Cir.1986). Since Dr. Wood was employed pursuant to 38 U.S.C. § 4114(a) as a temporary employee, terminable-at-will without cause, she lacks a legitimate claim of entitlement necessary for a constitutional cause of action. Federal employees "who are terminable at will have no property interest because there is no objective basis for believing that they will be employed indefinitely." *Hall v. Ford,* 856 F.2d 255, 265 (D.C.Cir.1988).

Defendants cite several cases where identical due process claims, premised on employment under 38 U.S.C. § 4114(a), were defeated on the basis of insufficient property interests. In *Elkin v. Roudebush,* 564 F.2d 810 (8th Cir.1977), the court held that a temporary nurse hired pursuant to 38 U.S.C. § 4114(a)(1)(A) did not have a sufficient property interest in her job to support a constitutional claim. Similarly, in *Balderman v. U.S. Veterans Administration,* 666 F.Supp. 461, 466 (W.D.N.Y. 1987), *aff'd in part, vacated in part,* 870 F.2d 57 (2nd Cir.1989), the claim of a part-time temporary employee hired by the VA pursuant to the same section was deemed insufficient. *See also, Sampang v. United States,* 652 F.2d 70, 227 Ct.Cl. 562 (1981)

---

12. In Defendants' January 14, 1991 Motion to Dismiss, it is further argued that even if a contract based upon oral representations was created and is enforceable, no remedy would lie against any of these Defendants because they are not parties to the contract. Analysis of this contention is unnecessary given the foregoing discussion.

(available on LEXIS, Genfed library, Courts file) (holding that no property interest exists in a § 4114 appointment).

■ Additionally, this Court agrees with Defendants' contention that even if there were some merit to Plaintiff Woods' due process/property interest claim, they are clothed with qualified immunity from any civil liability on this constitutional claim.

It is well-settled that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir. 1988). The applicability of the immunity defense is a question of law, and unless the allegations in the Plaintiff's complaint "state a claim of violation of clearly established law, a Defendant pleading qualified immunity is entitled to dismissal...." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

This immunity applies to federal employees at any level whose actions could result in a constitutional infringement. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Ramirez v. Webb,* 835 F.2d 1153, 1156 (6th Cir.1987). If federal employees could reasonably disagree as to the constitutional validity of the actions taken, the Defendants are entitled to immunity.

The Complaint fails to establish that, by failing to renew Dr. Woods' fixed-term temporary appointment, the Defendants violated a clearly established law. In fact, neither the statute under which she was appointed nor the implementing regulations support such a position.

For all of these reasons, the Court finds that Plaintiff Woods' claim in Count III fails to satisfy the criteria for a constitutional property interest claim. Therefore, Count III of Plaintiffs' Complaint will be dismissed.

### E. PLAINTIFF JUN'S TITLE VII DISCRIMINATION CLAIM (COUNT IV)

■ Plaintiff Young Jun, an Asian female, alleges that the Defendants denial of her application for permanent status was motivated by race and sex discrimination. On July 13, 1989, Dr. Jun's request for conversion to permanent status was considered by the Professional Standard Board and turned down for failure to meet the Dean's Committee Criteria for VA Staff Appointment. These criteria reserve permanent appointments for those physicians that make substantial contribution in either research or administration. Dr. Jun does not dispute that, at the time of her denial she did not, and does not now, conduct any research or hold any administrative position.[13]

It is well-settled that the burden is on the employment discrimination plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972). Once a plaintiff has established a *prima facie* case, the defendant may rebut this by showing a legitimate nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). If the defendant can show a legitimate nondiscriminatory reason for its employment decisions, then the plaintiff must produce evidence that the Defendants' articulated reason for their action is a mere pretext for discrimination. *Id.* The Defendant is entitled to entry of Summary Judgment as a matter of law, under the authority of *Celotex Corporation v. Catrett, su-*

---

**13.** In fact, as explained above in this Opinion and Order, more than one-half of the physicians on the staff at the Allen Park VA Hospital hold temporary positions. According to the Affidavit of Elaine Marten, the V.A. Assistant Personnel Officer, and the exhibits attached thereto, only one doctor in the ambulatory care department in which Plaintiff worked, Dr. Ramesh Padiyar, an Asian male, has a permanent appointment. Even defendant Boaz Milner, Dr. Jun's supervisor, does not have a permanent appointment.

*pra,* 477 U.S. at 323, 106 S.Ct. at 2552–53, if the Plaintiff cannot "make a sufficient showing of an essential element of her case with respect to which she has the burden of proof."

In *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, the Supreme Court established the elements of a *prima facie* case of disparate treatment. Under *McDonnell Douglas* and its progeny, Plaintiff Jun must show (1) that she belongs to a protected class; (2) that she applied and was qualified for promotion for which her employer was seeking applicants; (3) that she was rejected despite her qualifications; and (4) that "similarly-situated" comparable employees outside of her protected class were treated differently under circumstances that may give rise to inference of discrimination.

Plaintiff Jun cannot establish a *prima facie* case since she was not qualified for conversion to permanent status under the criteria for permanent appointments. Dr. Jun does not dispute that she did not make any contribution in research or administration. The VA Dean's Committee Criteria require a "substantial" contribution, and the Plaintiff obviously fell well short of this bench mark. Thus, being unable to establish that she was qualified for a "permanent" appointment, Plaintiff has not satisfied the second *McDonnell Douglas prima facie* case criterion.

Even if the this Court were to determine that Dr. Jun was qualified for a "permanent" position, her attempt to show that "similarly-situated" employees outside of her protected class were treated differently are equally unavailing. In making a comparison for the purposes of a disparate treatment claim, Plaintiff must show that any "comparable" employee with whom she seeks to compare her treatment was similarly-situated in all respects. *Stotts v.*

*Memphis Fire Department,* 858 F.2d 289 (6th Cir.1988); *Cox v. Electronic Data Systems Corp.,* 751 F.Supp. 680, 691 (E.D. Mich.1990). Thus, any individual with whom the Plaintiff makes a comparison must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without differentiating or mitigating the circumstances. *Mazzella v. RCA Global Communications,* 642 F.Supp. 1531 (S.D. N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir.1987); *Lanear v. Safeway Grocery,* 843 F.2d 298 (8th Cir.1988); *Cox v. Electronic Data Systems Corp., supra.*

The Sixth Circuit recently reiterated this premise in *Scales v. J.C. Bradford & Co.,* 925 F.2d 901 (6th Cir.1991), and found that the Title VII sex discrimination plaintiff in that case had not established a *prima facie* case of disparate treatment because she failed to establish that she had the same qualifications as the male with whom she purported to compare her treatment.

In this case, the only successful applicant for permanent status in ambulatory care, Dr. Ramesh Padiyar, an Asian male, was not similarly-situated. The Affidavit of Michael Sampson, the Chief of Staff, establishes that, unlike Dr. Jun, Dr. Padiyar met the VA Dean's Committee Criteria by virtue of his administrative contributions as chairman of the Quality Assurance Committee, his serving as Deputy Associate Chief of Staff for Ambulatory Care and his undertaking of the duties of VA Personnel Health Physician.[14] Plaintiff Jun does not dispute that she did not have the same or similar qualifications as Dr. Padiyar when her application for permanent status was rejected by the Professional Standards Board. Thus, the differences between her treatment and Dr. Padiyar's cannot give rise to an inference of discrimination.[15]

---

**14.** As Personnel Health Physician, Dr. Padiyar is responsible for seeing acutely ill employees, screening new employees, administering vaccines and preventing the spread of communicable diseases in the hospital. [See Sampson Affidavit, para. 4.]

**15.** Moreover, the fact that Dr. Padiyar is, like Dr. Jun, an Asian, belies Plaintiff Jun's claim of race or ethnic discrimination.

In fact, the employment records and statistics regarding "permanent" conversions at the Allen Park VA Hospital (attached to Defendants' Brief in Support of Summary Judgment on Count IV) show that since 1983, only eight employees have succeeded in obtaining conversion from "tempo-

Where, as here, a plaintiff cannot establish that employees with whom he/she contends were treated differently were similarly-situated in all respects, summary judgment is proper. *Gunner v. Chevron, U.S.A., Inc.*, 684 F.Supp. 916 (E.D.Tex. 1988); *Rials v. Allstate Insurance Co.*, 45 FEP Cases 33, 1987 WL 42406 (E.D.Mich. 1987); *Sargent v. International Brotherhood of Teamsters*, 713 F.Supp. 999 (E.D. Mich.1989); *Cox v. Electronic Data Systems Corp., supra.*

Even if the Court were to find that Plaintiff Jun has established a *prima facie* case, Defendants have articulated a legitimate, non discriminatory reason for their decision not to convert her to "permanent" status, i.e., the Professional Standards Board found that Dr. Jun did not meet the criteria for permanent appointments set forth in the Dean's Committee "Criteria for VA Staff Appointments".

Thus, to go forward with her case, Plaintiff Jun must produce evidence of pretext. *Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. at 255, 101 S.Ct. at 1094–95. Dr. Jun has not done so. Rather in her Response to Defendants' Motion for Summary Judgment on Count IV, she merely asserts, without any factual support whatsoever, that she was not appointed to a permanent position because Defendant Milner failed to recommend her and "Defendant Milner's motivation for refusing to recommend [her] for permanent status was ethnically and genderally [sic] based." [See, page 2 of Plaintiffs' February 11, 1991 Brief.] However, it is well-settled that "conclusory allegations and subjective beliefs are insufficient evidence to establish a claim of discrimination as a matter of law." *Cox v. Electronic Data Systems Corp., supra*, 751 F.Supp. 680; *O'Shea v. Detroit News*, 887 F.2d 683 (6th Cir.1989); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987).

Because the Plaintiff is unable to show that the stated reason for her denial was a pretext for discrimination, the claim contained in Count IV of Plaintiffs' Complaint will be dismissed.

## VI. CONCLUSION

For all of the reasons set forth in this Memorandum Opinion and Order, the Court determines that Plaintiffs have not established any jury-submissible issue in this case. Thus, summary judgment will be entered in favor of Defendants on all four Counts in Plaintiffs' Complaint, and this action will, accordingly, be dismissed in its entirety.

## ORDER

For the reasons set forth in this Memorandum and Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment be, and hereby are, GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Cross–Motion for Summary Judgment on Count I be, and hereby is, DENIED.

Accordingly,

IT IS FURTHER ORDERED that the Plaintiffs Complaint be, and hereby is, DISMISSED in its entirety with prejudice.

Let judgment be entered accordingly.

---

rary" positions to "permanent" ones. Of those eight, *four* are women, and *two*—Dr. Padiyar and Dr. Verma, although both males—are, like Plaintiff Jun, of Asian–Pacific origin. All eight of the doctors who successfully obtained conversion to "permanent" status had merit funding or were engaged in administrative functions.